**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA** | **Case No.** 24-cr-00489 (CRC) |
| **v.** | |
| **RAHEEM SNIDER,** | |
| **Defendant.** | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

Mr. Snider comes before this court for sentencing for having been found in possession of yet another loaded, illegal, and deadly gun. Despite being only twenty-seven, Mr. Snider has accrued a laundry list of convictions for theft, firearm possession, and drug possession. He has never successfully completed probation and routinely re-offended while on court-ordered supervision. Despite consistently benefitting from leniency in his encounters with the justice system, Mr. Snider remains completely undeterred. And his convictions are only the tip of the iceberg.   Mr. Snider benefitted from having a gun possession case charged in this Court dismissed due to factors independent of his conduct. Further, Mr. Snider's phone shows that he has access to and possession of even more firearms and significant quantities of illegal narcotics. Mr. Snider's consistent and undaunted criminal conduct necessitates a significant term of incarceration.

For all the following reasons, the Government recommends a sentence of fifty-seven months' incarceration, followed by three years of supervised release.

## **BACKGROUND**

On October 23, 2024, members of the Seventh District's Special Missions Unit were conducting proactive patrol in the 2700 block of Langston Place Southeast. Over the preceding months, that area had experienced a rash of back-and-forth shootings.

Prior to their arrival in the area, SMU officers were made aware by the Seventh District Detectives' Office that there was an active D.C. Superior Court arrest warrant issued for Mr. Snider for Destruction of Property.   In that case, Mr. Snider was accused of destroying one of the security cameras overlooking a stoop in the 2700 block of Langston Place Southeast. This was of particular concern to law enforcement, as the video cameras on that and the adjoining area had proved essential to prosecuting some of the shootings in that area.

As officers entered the block, they observed Mr. Snider sitting on one of the stoops.   Mr. Snider was arrested without incident. Officers conducted a search incident to arrest and recovered a firearm from the groin area of Mr. Snider's compression pants. The firearm was a black and silver Smith & Wesson SD 40 .40 caliber handgun equipped with a flashlight loaded with thirteen rounds in a fourteen round magazine and one round in the chamber.



Additionally, law enforcement recovered Xanax pills, various forms of marijuana, small plastic bags, a digital scale, and some cash.

*__Firearms and Drugs on Mr. Snider's Phone__*

On January 25, 2024, law enforcement executed a search warrant at 2748 Bruce Place Southeast, Washington, D.C.   Based on social media posts and law enforcement surveillance, that apartment was being operated as a "trap house," to store firearms and narcotics.   At the time law enforcement executed the warrant, Mr. Snider was inside along with eleven other individuals. Also inside the residence, law enforcement recovered the following:

- Approximately 1,830 blue "M30" pills (suspected pressed fentanyl pills);
- Approximately 84 grams of suspected cocaine/crack cocaine;
- Approximately 18.5 ounces of suspected PCP;
- Approximately 4.6 pounds of suspected marijuana;
- Glock 29 10mm pistol with SN: BYAL520;
- Glock 30 .45 caliber pistol with SN: BUSY200 and an apparent machinegun conversion device;
- Kel-Tec PLR-16 AR-Style 5.56 pistol with SN: P2C92;
- On one suspect's person, a Glock 23 .40 pistol with SN: BFTE471 and an apparent machinegun conversion device;
- A stolen Honda Motorcycle; and

3

- Assorted magazines and ammunition (approximately 245 rounds of loose ammunition).

Mr. Snider's phone was seized pursuant to the warrant and subsequently searched. Mr. Snider's phone contained numerous images of him holding firearms and narcotics, including some similar to those recovered during the January 25, 2024 search.

For example, the following images reflect Mr. Snider holding a rifle-style firearm (left) consistent in appearance to the Keltec PLR-16 recovered from the trap house (right).



Additionally, Mr. Snider's phone depicts an individual who appears to be him holding a Glock 23 with an apparent machinegun conversion device, aftermarket grip, and extended magazine (left).    A Glock 23 with the same somewhat unique characteristics was recovered during the January 25, 2024 search (right).

4



Another image shows an individual who appears to be Mr. Snider, based on his distinctive arm tattoo, holding a different firearm.



And another image reflects Mr. Snider standing in the kitchen of that trap house apartment, holding an apparent AK-47 style pistol, and standing next to a large bag of marijuana.



The phone also contains numerous videos and pictures of apparent marijuana and hand-pressed fentanyl pills consistent with those recovered from the Bruce Place trap house.





### *The Pre-Sentence Investigation Report*

The Pre-Sentence Investigation Report (PSIR) summarizes Mr. Snider's personal and

criminal history. *See* ECF No. 15. Mr. Snider is twenty-seven and was born and raised in Washington, D.C. PSIR at 2, ¶ 65. He reported that his parents separated when he was a teenager, though he was well-provided for financially. PSIR at ¶ 67. Mr. Snider's father passed when he was fifteen or sixteen. PSIR at ¶ 68. Mr. Snider reported some struggles with substance abuse. PSIR at ¶ 80. Mr. Snider left high school in the 11th grade. PSIR at ¶ 82. He reported sporadic employment in a few odd jobs for the last few years. PSIR at ¶¶ 85-88.

### _Mr. Snider's Criminal History_

Mr. Snider has been arrested twenty-eight times, convicted ten times, and had at least four bench warrants issued and executed against him.

On July 25, 2017, Mr. Snider was arrested and charged with shoplifting in 2017 CMD 013770. On December 13, 2018, Mr. Snider pled guilty and was sentenced to a suspended sentence. Mr. Snider was sentenced under the Youth Rehabilitation Act (YRA). Despite that, he ultimately did not receive the benefit of the YRA given re-arrests.

On October 25, 2017, Mr. Snider was charged with Failing to Appear in the shoplifting case. He pled guilty and was sentenced on December 13, 2018 to a suspended term. He once again was sentenced under the YRA but once again did not receive the benefit of the YRA given additional re-arrests.

On November 10, 2018, Mr. Snider was arrested and charged with Identify Theft. He was convicted on April 5, 2019 and sentenced to a six-month sentence with ninety days suspended.

On December 21, 2018, Mr. Snider was charged with Failure to Appear. He was convicted on April 5, 2019 and sentenced to a suspended term. On February 8, 2020, MPD officers executed a search warrant at 2424 Elvans Road SE, Washington, D.C. Mr. Snider was found inside the apartment with other individuals. Officers recovered from Snider's person fifty-three oxycodone

pills, a plastic bag containing 4.1 grams of synthetic cathinones, an additional thirty-six blue pills marked "M30" and suspected to be fentanyl. Snider ultimately pled guilty to Attempted Possession with Intent to Distribute Fentanyl and received another suspended sentence. His probation expired unsatisfactorily.

On January 19, 2020, Mr. Snider was convicted of Theft Scheme: $1,500 to Under $25,000 and sentenced to five years' imprisonment with four suspended.

On September 1, 2020, MPD officers arrested Snider based on an open warrant for failing to appear in Charles County, Maryland. Search incident to arrest recovered a 9mm black and silver Glock 43X loaded with nine rounds in the magazine and one in the chamber. In Snider's pocket, officers recovered twenty-six blue pills marked "M30" and suspected to be fentanyl. Snider was convicted on January 11, 2021, and received another suspended sentence. His probation expired unsatisfactorily.

On May 1, 2023, Mr. Snider was convicted of Second-Degree Escape and sentenced to one year in prison.

Mr. Snider was on supervised probation at the time of this offense. Prior to his re-arrest, his compliance with probation was inconsistent. He failed to report, failed to drug test, and failed to appear in court for a probation violation hearing. A warrant was issued for his arrest given his failure to appear, leading to his arrest in this case.

## ARGUMENT

Although the Sentencing Guidelines are advisory, under *United States v. Booker*, a sentencing court "must consult those Guidelines and take them into account when sentencing." 543 U.S. 220, 264 (2005); *United States v. Brown*, 892 F.3d 385, 399 (D.C. Cir. 2018). The Supreme Court has noted that while the Guidelines provide "the starting point and the initial

benchmark" for sentencing, the district court should consider all the § 3553(a) factors. *Gall v. United States*, 552 U.S. 38, 49–50 (2007). The Guidelines' recommended sentencing range will ordinarily "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Kimbrough v. United States*, 552 U.S. 85, 108–09 (2007).

The listed factors in 18 U.S.C. § 3553(a) include the following:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed –
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for –
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –
>>> (i) issued by the Sentencing Commission . . .; and
>>> (ii) that, . . . are in effect on the date the defendant is sentenced; . . .
>
> (5) any pertinent policy statement –
>> (A) issued by the Sentencing Commission . . . and
>> (B) that, . . . is in effect on the date the defendant is sentenced.
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

But the Sentencing Guidelines are only "the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). They "are not the only consideration." *Id.* A sentencing judge "should . . . consider all of the § 3553(a) factors," and "[i]n so doing, . . . may not presume

10

that the Guidelines range is reasonable." *Id.*at 50. "[I]t is not error for a district court to enter sentencing variances based on factors already taken into account by the Advisory Guidelines, in cases in which the Guidelines do not fully account for those factors, or when a district court applies broader § 3553(a) considerations in granting the variance." *United States v. Ransom*, 756 F.3d 770, 775 (D.C. Cir. 2014) (citation and internal quotation marks omitted). In doing so, "the district court can rely on hearsay as evidence for its findings." *United States v. Miller*, 35 F.4th 807, 818 (D.C. Cir. 2022). *See also United States v. Jones*, 744 F.3d 1362, 1368 (D.C. Cir. 2014) ("Clear precedent permits hearsay to be used in sentencing decisions."). And the sentencing court can consider conduct by a defendant that was not charged or even for which a defendant was acquitted. *See United States v. Settles*, 530 F.3d 920, 923 (D.C. Cir. 2008) ("[L]ong-standing precedents of the Supreme Court and this Court establish that a sentencing judge may consider uncharged or even acquitted conduct in calculating an appropriate sentence, so long as that conduct has been proven by a preponderance of the evidence and the sentence does not exceed the statutory maximum for the crime of conviction.").

## THE APPLICABLE SENTENCING GUIDELINES

The PSIR estimates Mr. Snider's offense level to be 17 and his criminal history to be Category VI, yielding a Guidelines imprisonment range of fifty-one to sixty-three months' imprisonment. PSIR at ¶¶ 96, 98. Additionally, the PSIR reflects a Guidelines range of one to three years of supervised release and a fine of $10,000 to $95,000. PSIR at ¶¶ 99, 112. The Government agrees with these calculations.

## THE GOVERNMENT'S SENTENCING RECOMMENDATION

The Government recommends that the Court sentence Mr. Snider to fifty-seven months' imprisonment followed by three years of supervised release. This sentence reflects the serious

nature of this offense, Mr. Snider's continued commission of offenses despite judicial intervention, and provides adequate deterrence to others in the community particularly given the dangers of carrying illegal firearms.

**I.      The Nature and Circumstances of Mr. Snider's Offense.**

Mr. Snider has pled guilty to a serious offense: he possessed a loaded, deadly, and illegal weapon while also in possession of narcotics and distribution paraphernalia.

To his credit, Mr. Snider was not charged with using the firearm and did not resist when law enforcement sought to arrest him and retrieve the firearm. But our courts have warned against discounting the inherent danger associated with loaded firearms. *See United States v. Blackson*, No. 23-CR-25 (BAH), 2023 WL 1778194, at *7-8 (D.D.C. Feb. 6, 2023), *aff'd*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023) (the absence of evidence of "use" "does little to detract from" the danger posed by a firearm "loaded with 19 rounds of ammunition in an extended magazine, . . . more ammunition than the gun was originally manufactured to carry, thereby increasing its potential to do greater harm" and placement "at the ready, on his person, and easily within reach"). This firearm was loaded and at the ready, easily accessible on Mr. Snider's person, in an alley that had seen far too many shootings. *See United States v. Kent*, 496 F. Supp. 3d 500, 502 (D.D.C. 2020), *aff'd* (Nov. 5, 2020) (noting that "the firearm recovered from the Defendant's person had a round already chambered, making the circumstances even more troubling,")

This was a loaded and deadly weapon on Mr. Snider's person. His access to this illegal firearm would allow him to escalate even the most mundane of disagreements into a deadly affair. The illegal possession of a deadly weapon is a serious offense, justifying a significant term of incarceration.

II.    **Mr. Snider's History and Characteristics.**

Despite his fairly young age, Mr. Snider has a lengthy criminal history. He has multiple convictions for dishonesty (identify theft and theft), firearm possession, and drug distribution. He has never successfully complied with the terms of supervision. For every single conviction except his first adult conviction, Mr. Snider was on supervision at the time he was re-arrested.

The photographs on his phone and his January arrest in the Bruce Place trap house make clear that the conduct for which he was most recently charged was not aberrational. Mr. Snider has ready access to firearms, possesses large quantities of different types of drugs, including fentanyl, and is completely undeterred by arrests, convictions, and supervision. But if anything, Mr. Snider's criminal history understates his dangerousness and stubborn insistence on carrying guns and drugs.

On May 26, 2022, Mr. Snider broadcast a live video of himself on social media smoking marijuana and carrying a handgun in a vehicle parked in the 2700 block of Langston Place SE. This is the same area in which he was arrested for this offense and where he allegedly destroyed a camera. MPD officers responded to that area and observed Snider in a vehicle. In the vehicle officers recovered a loaded Glock 30 with an apparent machine gun conversion device which matched the firearm he had displayed on social media. On May 27, 2022, Mr. Snider was charged in this Court with a violation of 18 U.S.C. § 922(g) in Case No. 22-cr-203 (TSC). Following a detention hearing held before the Honorable Zia M. Faruqui, Snider was detained pending trial. *See United States v. Raheem Snider*, 22-cr-203, ECF No. 7. This case was ultimately dismissed due to an investigation of certain of the arresting officers unrelated to Mr. Snider's possession of a firearm. This dismissal presented Mr. Snider with a unique opportunity to change his behavior by avoiding guns and drugs.

He clearly has not done so. Instead, Mr. Snider has continued with the same behavior:

possessing illegal firearms and narcotics. And all the while, Mr. Snider has remained on supervised probation. Mr. Snider does not appear to have made serious attempts to seek out job opportunities or additional education. He has continued to commit the same offenses for which he has previously been arrested and convicted.

**III.    <u>The Need for the Sentence Imposed.</u>**

The requested sentence is sufficient but no greater than necessary to meet the goals of sentencing. The sentence provides specific deterrence: it will keep our community safe from Mr. Snider for a significant period. It provides general deterrence: it will signal to the community that the possession of loaded illegal firearms is a deadly serious matter and hopefully deter others from doing so. And it provides an opportunity for Mr. Snider to reflect on the serious and repetitive nature of his crimes.

Mr. Snider has received the benefit of leniency during almost every previous interaction with the criminal justice system. He has received suspended sentences and relatively short periods of incarceration. He even benefitted from the dismissal of a case against him for reasons wholly independent of his own conduct. None of this has deterred him or caused him to question his conduct. Despite these many opportunities, Mr. Snider continues to arm himself and at the very least possess controlled substances. He has even tried to obscure his criminal conduct from law enforcement by destroying a surveillance camera used to monitor and discourage violent crime. Prior prison sentences, court supervision, the threat of rearrest have done nothing to deter him. He is now thirty-one. He no longer has the excuse of youth or impulsiveness. The requested sentence of fifty-seven months is a reasonable one that secures the goals of justice.

## <u>CONCLUSION</u>

For all the foregoing reasons, the Government respectfully requests that the Court impose

a sentence of fifty-seven months of incarceration followed by three years of supervised release.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

 /s/ Cameron A. Tepfer
Cameron A. Tepfer
N.Y. Attorney No. 5248208
Assistant United States Attorney
601 D Street NW
Washington, D.C. 20530
202-258-3515
Cameron.Tepfer@usdoj.gov